IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ANGELA MARIE MONTGOMERY** | * | |
| | * | |
| v. | * | Civil Case No. JFM-15-271 |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| | * | |

*************

**AMENDED REPORT AND RECOMMENDATIONS**

Pursuant to Standing Order 2014-01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I issued a Report and Recommendations on December 28, 2015. [ECF No. 20]. Ms. Montgomery filed an Objection to the Report and Recommendations arguing, among other things, that the Fourth Circuit's recent ruling in *Pearson v. Colvin*, No. 14-2255, 2015 WL 9204335 (4th Cir. Dec. 17, 2015) is relevant to the evaluation of her case. United States District Judge J. Frederick Motz therefore recommitted the case to me to consider the impact of *Pearson* and to amend the Report and Recommendations. [ECF No. 23]. I have now considered the parties' cross-motions for summary judgment, Ms. Montgomery's Reply, Ms. Montgomery's Objection to the Report and Recommendations, and the Commissioner's Response. [ECF Nos. 15, 16, 19, 21, 22]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that Ms. Montgomery's motion be denied, that the Commissioner's motion be

granted, and that the Commissioner's judgment be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Montgomery protectively filed an application for Disability Insurance Benefits ("DIB") on May 27, 2011, alleging a disability onset date of May 1, 2007.[1] (Tr. 19, 83). Her application was denied initially on September 20, 2011, and on reconsideration on February 2, 2012. (Tr. 83-92; 94-107; 109-12; 114-16). An Administrative Law Judge ("ALJ") held a hearing on October 10, 2013, at which Ms. Montgomery was represented by counsel. (Tr. 38-81). Following the hearing, the ALJ determined that Ms. Montgomery was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 19-28). The Appeals Council denied Ms. Montgomery's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Montgomery suffered from the severe impairments of asthma, sleep apnea, morbid obesity, status post bilateral carpal tunnel syndrome release in 2001 and 2002, and mild degenerative joint disease of the left knee. (Tr. 21). Despite these impairments, the ALJ determined that Ms. Montgomery retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except she could frequently handle and finger; she could occasionally climb ramps or stairs (never ladders, ropes, or scaffolds), and occasionally balance, stoop, kneel, crouch, and crawl; and she must avoid even moderate exposure to respiratory irritants and workplace hazards.

(Tr. 23). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Montgomery could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled. (Tr. 26-27).

Ms. Montgomery disagrees. She raises two primary arguments on appeal: (1) that the

---

[1] Because Ms. Montgomery's date last insured is December 31, 2011, she had to establish disability between May 1, 2007, and December 31, 2011.

ALJ failed to support her RFC assessment with substantial evidence; and (2) that the ALJ's findings at step five were erroneous because they were based on a flawed RFC assessment. Ms. Montgomery also raised additional arguments in her Objection to the original Report and Recommendations. First, Ms. Montgomery argues that the Report and Recommendations failed to address conflicts in the evidence that were allegedly unresolved by the ALJ's narrative discussion. This is essentially a recitation of Ms. Montgomery's earlier arguments on appeal. Next, Ms. Montgomery asserts that the Fourth Circuit's recent ruling in *Pearson*, is relevant to the evaluation of her case. Each of Ms. Montgomery's arguments, both from her appeal and from her Objection to the Report and Recommendations, lacks merit and is addressed further below.

Turning to Ms. Montgomery's first argument, she contends that the ALJ failed to support her findings in the RFC assessment, specifically her findings regarding manipulative limitations, with substantial evidence. Pl. Mot. 10-18. Ms. Montgomery argues that the ALJ committed reversible error in finding that she was able to "frequently handle and finger," while the medical evidence supported a greater limitation to only occasional handling or fingering. *Id.* In support, Ms. Montgomery cites the findings of a consultative examiner, Dr. Shah, who found that Ms. Montgomery had "manipulative limitations on handling, feeling, grasping, fingering and the claimant will be able to perform these occasionally due to hand weakness." (Tr. 354). In addition, Ms. Montgomery points out that the initial DDS opinion from the State found that she was limited to only occasional "handling, feeling, grasping, [and] fingering due to hand weakness," while on reconsideration, DDS found that she was capable of frequent handling and fingering bilaterally. (Tr. 87, 104). On reconsideration, DDS purported to base its opinion of Ms. Montgomery's manipulative limitations largely on Dr. Shah's opinion, which Ms.

3

Montgomery argues was erroneous since Dr. Shah opined greater manipulative limitations than DDS. *Id.*

Based on this evidence, Ms. Montgomery asserts that the ALJ "cherry-pick[ed]" evidence to support the findings in her RFC assessment. Pl. Mem. 11. Specifically, she states that the ALJ "cherry-picked portions of Dr. Shah's conclusions with the intent to fabricate support for her deficient RFC determination." *Id.* Importantly, this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Even if there is other evidence that may support Ms. Montgomery's position, this Court is not permitted to reweigh the evidence or to substitute its own judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

In considering the entire record, I recommend that the District Judge find the ALJ's RFC determination was supported by substantial evidence. A review of Dr. Shah's report demonstrates that the ALJ provided a thorough analysis of Dr. Shah's findings regarding Ms. Montgomery's manipulative limitations. (Tr. 25-26). While the ALJ did not specifically mention Dr. Shah's opinion that Ms. Montgomery was limited to occasional handling, feeling, grasping, and fingering, the ALJ did note Ms. Montgomery's history of carpal tunnel syndrome, without any associated trauma or injury, her complaints of sharp pain in wrists, and her complaints that she drops things frequently. (Tr. 25, 349).[2] In addition, the ALJ cited Dr. Shah's findings that Ms. Montgomery was able to lift, carry, and handle objects, and that she was able to

---

[2] I note that Ms. Montgomery's Objection to the Report and Recommendations conflates discussion of her statements to Dr. Shah with discussion of his objective medical findings. *See* Pl. Obj. at 7 (citing Ms. Montgomery's allegations as "evidence fully supportive of Plaintiff's arguments"). Dr. Shah's report clearly indicates that these were allegations by Ms. Montgomery, and not his own findings. (Tr. 349) ("The claimant reports a history of bilateral carpal tunnel syndrome since age 20-30. She does not note any associated trauma or injury….She reports current symptoms of a sharp pain, intermittent sweating, swelling and weakness. She says she drops things occasionally.").

dress and undress adequately.  *Id.*  Dr. Shah found normal range of motion in the upper extremities, including in her elbows, shoulders, wrists, and hands, and findings of some decreased strength (4/5) in Ms. Montgomery's wrists bilaterally.  *Id.*; (Tr. 352).

In assigning weight to Dr. Shah's opinion, the ALJ stated only that "Dr. Shah's opinion that the claimant has exertional limitations is given limited weight as the record shows greater limitations."[3]  (Tr. 26).  Thus, ALJ did not assign any particular weight to Dr. Shah's opinion of Ms. Montgomery's non-exertional limitations.  Even so, I find this to be harmless error, since the ALJ provided a narrative discussion describing how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence.  SSR 96-8p; *see also*, 20 C.F.R. § 404.953.  With respect to manipulative abilities, the ALJ cited not only Dr. Shah's examination, but also evidence from the consultative examination performed by Dr. Freilich, who observed that Ms. Montgomery had "no functional limitations, and that the claimant was able to perform all her activities of daily living." (Tr. 25) (citing Tr. 307).  The ALJ agreed with Dr. Freilich, finding that Ms. Montgomery "was able to perform many activities of daily living."  (Tr. 26).  Ultimately, the ALJ found that "while [Ms. Montgomery] complained of problems with carpal tunnel syndrome, she reportedly underwent surgeries in 2001 and 2002, and the objective treatment record does not note further problems."  *Id.*  While there may be other evidence in the record that could be marshaled in support of a limitation to occasional manipulative limitations, because the ALJ's opinion is supported by substantial evidence, remand is unwarranted.

Ms. Montgomery next argues that the ALJ's allegedly improper findings in the RFC assessment "infected" her finding at step five that Ms. Montgomery is capable of performing

---

[3] The ALJ also assigned little weight to the opinions of DDS physicians who stated that Ms. Montgomery was capable of medium, and on reconsideration, light, exertional work, finding that they overestimated Ms. Montgomery's abilities.  (Tr. 26).  The fact that the ALJ determined an RFC more restrictive than the exertional levels opined by Dr. Shah and the DDS physicians indicates a careful review of the medical evidence.  *Id.*

work that exists in substantial numbers in the national economy. Pl. Mem. 14. The Fourth Circuit has explained that, in order for a VE's opinion to be helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of a claimant's impairments. *See Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989) (citing *Chester v. Matthews*, 403 F. Supp. 110 (D. Md. 1975)); *Stephens v. Secretary of Health, Education and Welfare*, 603 F.2d 36 (8th Cir. 1979)). Despite these requirements, the ALJ "has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, 166 F.3d 1209 (4th Cir. 1999). Ms. Montgomery contends that the ALJ posed hypotheticals to the VE, and upon hearing that Ms. Montgomery would only be capable of performing certain jobs if she were capable of frequent manipulation, subsequently found her to have that capability. Pl. Mot. 15. If true, this would be improper. However, there is no evidence that the ALJ determined Ms. Montgomery's abilities after hearing the VE's responses to hypotheticals. Rather, as stated above, the ALJ supported her findings in the RFC assessment with substantial evidence and a thorough review of the evidence of record, and she was free to reject any other suggested restrictions so long as she provided substantial evidence for doing so.[4]

Ms. Montgomery further argues that the ALJ erred because she did not include any limitations in feeling and grasping, as opined by Dr. Shah, in her RFC assessment. Pl. Mem. 15-16. I note, however, that the Agency's definition of "handling," as provided in its Program Operations Manual System ("POMS"), includes "[s]eizing, holding, grasping, turning, or

---

[4] In fact, the VE testified that sedentary jobs would be available even with a limitation to occasional manipulation, rendering any error harmless on that point. (Tr. 76-77).

otherwise working with the hand or hands."[5]  D.I. 25001.001.  Thus, by making findings regarding Ms. Montgomery's ability to handle, the ALJ inherently made a finding as to Ms. Montgomery's ability to work with her hands more generally, including her ability to grasp.

Next, Ms. Montgomery contends that the ALJ failed to consider "the special situation in SSR 83-12, which provides that a sedentary exertional limitation combined with a significant loss of bilateral manual dexterity, '[W]arrants a conclusion of disabled,' because '[B]ilateral manual dexterity is necessary for the performance of substantially all unskilled sedentary occupations.'"  Pl. Mem. 17 (internal quotations omitted).  Further, Ms. Montgomery points to SSR 96-9p, which provides that "[a]ny significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base."  Thus, because Ms. Montgomery is limited to sedentary work with additional manipulative limitations, she argues that she should be found disabled under the parameters of SSRs 83-12 and 96-9p, which the ALJ allegedly failed to consider.

A review of the ALJ's decision indicates that the ALJ did not find the "significant manipulative limitation of an individual's ability to handle and work with small objects with both hands," that would substantiate a finding of disability under SSRs 83-12 and 96-9p.  The ALJ specifically noted Dr. Shah's finding that Ms. Montgomery was able to dress and undress herself adequately, and that she had full range of motion in her upper extremities. (Tr. 25-26).  Thus, the ALJ concluded that Ms. Montgomery "was able to perform many activities of daily living." (Tr. 26).  This finding is not indicative of the type of manipulative limitations that would "result in a significant erosion of the unskilled sedentary occupational base," SSR 96-9p, and the ALJ

---

[5] The Agency's definition of "handling" further states, "Fingers are involved only to the extent that they are an extension of the hand."  By contrast, the Agency defines "fingering" as "[p]icking, pinching, or otherwise working with the fingers primarily (rather than the whole hand or arm as in 'Handling')."  D.I. 25001.001.

supported her finding with substantial evidence from the record. Accordingly, I find no error under SSRs 83-12 and 96-9p.

Finally, Ms. Montgomery argues in her Objection to the Report and Recommendations that remand is warranted under the Fourth Circuit's recent decision in *Pearson v. Colvin*, No. 14-2255, 2015 WL 9204335 (4th Cir. Dec. 17, 2015). Pertinent to this case, in *Pearson*, the Fourth Circuit held that an ALJ has a duty, independent of the VE, to identify any "apparent conflicts" between the VE's testimony and the Dictionary of Occupational Titles and to resolve any such conflicts. *Id.* at *3-*5.

For background, at step four of the sequential evaluation an ALJ must consider whether a claimant is able to perform any past relevant work within the confines of the claimant's RFC. 20 C.F.R. § 404.1520(a)(4). At step five, the ALJ must consider whether, considering the claimant's age, education, and work experience, the claimant is capable of performing other jobs existing in substantial numbers in the national economy.[6] *Id.* In making findings at steps four and five, an ALJ may rely on the testimony of a VE.[7] SSR 00-4p. The ALJ and the VE are to rely on the Dictionary of Occupational Titles ("DOT") to define any jobs the claimant is able to perform in terms of the exertional, non-exertional, and mental activities they require. *Id.* Furthermore, the ALJ has a duty to identify any apparent conflicts between the VE's testimony and the DOT. *Id.* ("When there is an apparent unresolved conflict between VE … evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on

---

[6] To determine how many of a particular job exist in the national economy, the ALJ and the VE rely upon Occupational Employment Statistics from the United States Department of Labor, among other sources. 20 C.F.R. § 404.1566(d) ("When we determine that unskilled, sedentary, light, and medium jobs exist in the national economy (in significant numbers either in the region where you live or in several regions in the country), we will take administrative notice of reliable job information available from various governmental and other publications.").

[7] The burden of proof is on the claimant during steps one through four of the sequential evaluation, while the burden shifts to the Agency at step five in determining that the claimant is able to perform other work. *See* 20 C.F.R. 404.1512(f); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); HALLEX II-5-3-3.

the VE … evidence to support a determination or decision about whether the claimant is disabled.").

In *Pearson*, the Fourth Circuit held that the ALJ's duty to identify and resolve conflicts with the DOT is independent from any duty the VE may have to identify such conflicts, and that the duty extends beyond simply asking the VE whether his testimony is consistent with the DOT. 2015 WL 9204335 at *3-*5. Rather, the Fourth Circuit clarified that "the *ALJ* (not the vocational expert)" is required to "'[i]dentify *and* obtain a reasonable explanation' for conflicts between the vocational expert's testimony and the *Dictionary*…." *Id.* at 4 (emphasis in original) (citing SSR 00-04p). The Fourth Circuit limited the ALJ's duty to identifying "apparent" conflicts, which it held to mean "that the ALJ must identify where the expert's testimony seems to, but does not necessarily, conflict with the *Dictionary*. For the Ruling [SSR 00-4p] explains that '[i]f the [vocational expert]'s … evidence *appears to conflict* with the [*Dictionary*], the adjudicator will obtain a reasonable explanation for the *apparent* conflict.'" *Id.* at *5 (emphasis in original). In *Pearson*, the apparent conflict at issue involved the degree of reaching required for a job identified by the VE. *Id.* at *6-*7. According to the DOT, the job required frequent reaching, in no specific direction, while the claimant was limited to occasional overhead reaching with one arm. *Id.* Thus, the Fourth Circuit found that the ALJ erred by failing to identify and resolve the apparent conflict between the VE's testimony that the claimant could perform the job and the job requirements provided by the DOT. *Id.*

In the instant case, Ms. Montgomery argues that the ALJ failed to identify and resolve an allegedly apparent conflict between the VE's testimony that she can perform jobs existing in substantial numbers in the national economy and the Department of Labor's Occupational Employment Statistics regarding availability of those jobs in the national economy. Pl. Obj. 15-

20. Ms. Montgomery notes that the Department of Labor statistics group and classify jobs in a different fashion than in the DOT. *Id.* at 18-19. Thus, she argues that the numbers of jobs presented by the VE as being available in the national economy are inaccurate and may include jobs that exceed her RFC.[8] *Id.*

Ms. Montgomery's argument exceeds the bounds of an "apparent conflict" as defined in *Pearson*. *Pearson* concerned conflicts between the VE's testimony about the jobs a claimant can perform and DOT definitions of jobs and the activities they require. *Pearson*, 2015 WL 9204335 at *3-*5. *Pearson* did not address conflicts between jobs in the DOT and the Department of Labor's statistics about their prevalence in the national economy. *Id.* Furthermore, I note that the conflict cited by Ms. Montgomery is not "apparent" as characterized by the Fourth Circuit. The Fourth Circuit explicitly sought to avoid a standard that would "require the ALJ to do more than simply compare the express language of the *Dictionary* and the vocational expert's testimony, and would allow the claimant to nitpick an ALJ's or expert's word choice on appeal." *Id.* at *5. Thus, Ms. Montgomery's argument exceeds the scope of the ALJ's duty. Finally, I note that even if the number of jobs that Ms. Montgomery could perform cited by the VE were reduced based on the conflict she alleges, the bar for what constitutes "substantial numbers in the national economy" is generally quite low. *See Lawler v. Astrue*, No. 09–1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that the fact that there were only 75–100 jobs in the region where plaintiff lives "does not undermine the ALJ's conclusion that plaintiff is capable of performing work that exists in significant numbers in the national economy."); *Hicks*

---

[8] For instance, Ms. Montgomery states, "the Occupational Employment Statistics (OES) data according to the U.S. Department of Labor for Sedentary Security Guard consists of to (sic) two (2) Standard Occupational Classification (SOC) codes, 33-9099 and 33-9031. Sedentary Security Guard falls under SOC code 33-9099 along with 4 other occupations including: Polygraph examiner (SVP 5; Light); Community service officer (SVP 3; Light); School bus monitor (SVP 3; Light); and Deputy United States Marshall (SVP 5; Medium). In the aggregate, the OES data provides for more than 90,000 jobs nationally. However, four (4) out of the five occupations included in such data, identified above, provide for jobs with Light or Medium requirements, in clear contradiction with the VE testimony, the RFC, and the DOT." Pl. Obj. at 18.

*v. Califano*, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number). With the aggregate numbers exceeding 90,000, it is unlikely that even the reduced number would be grounds for remand.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment [ECF No. 16];

2. the Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 15];

3. the Court AFFIRM the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g);

and

4. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: January 19, 2015                         /s/
                                                                Stephanie A. Gallagher
                                                                United States Magistrate Judge